988 F.2d 120
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Mozelle MALONE, Plaintiff-Appellee/Cross-Appellant,
v.
CALIFORNIA STATE COLLEGE, STANISLAUS; California State
College, Bakersfield; Hubert S. Betenbaugh, M.D.;
Clifford Walker, M.D.,
Defendants-Appellants/Cross-Appellees.
 Nos. 91-16496, 91-16588.
 United States Court of Appeals, Ninth Circuit.
 Submitted Feb. 1, 1993.*
Decided Feb. 25, 1993.
 
 Appeal from the United States District Court for the Eastern District of California, No. CV-84-00601-EDP; Edward D. Price, District Judge, Presiding.
 E.D.Cal.
 REVERSED AND REMANDED.
 Before ALARCON, RYMER and T.G. NELSON, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Dr. Clifford Walker appeals from the district court's judgment finding him in violation of 42 U.S.C. § 1983 for discharging Mozelle Malone on the basis of race and sex. California State College, Stanislaus, California State College, Bakersfield, Dr. Hubert Betenbaugh, and Dr. Walker (collectively "the State") also appeal from the judgment of the district court finding them in violation of Title VII, 42 U.S.C. sections 2000e-2(a) and 2000e-3(a), and awarding Malone $300,000 in damages. Malone has filed a cross-appeal from that portion of the district court's judgment denying her reinstatement.
 
 
 3
 Because we find that Malone failed to present any evidence to support one of her theories of liability and the trial judge did not instruct on the elements of retaliatory discharge, we reverse the judgment based on the jury's general verdict. Since the district court appears to have considered itself bound in its disposition of the Title VII claim by the jury's general verdict, we also set aside the judgment on that cause of action.
 
 I.
 
 4
 Malone, a black female medical laboratory technician, worked at the student clinic at California State College, Bakersfield (Bakersfield) under the supervision of Dr. Hubert Betenbaugh. On September 7, 1982, Malone filed a racial discrimination complaint with the California Department of Fair Employment and Housing (DFEH) against Dr. Betenbaugh and his colleagues. The complaint was settled without litigation after Betenbaugh altered Malone's working conditions and gave Malone supervisory power over her student lab assistant. As part of the settlement, no finding was made regarding whether Betenbaugh discriminated against Malone.
 
 
 5
 In late 1982, Malone applied for a job as a medical laboratory technician in the student clinic at California State College, Stanislaus (Stanislaus). Dr. Betenbaugh gave her a good recommendation. She was considered well-qualified by Dr. Walker, who largely supervised the hiring process at Stanislaus. Stanislaus hired Malone on January 3, 1983.
 
 
 6
 Problems soon developed. According to a letter prepared by Dr. Walker on March 29, 1983 for his supervisor, Dr. Cary Peyton, Malone made a series of errors during her first three months at Stanislaus. The most serious mistakes involved test results reported by Malone that differed from the results of outside laboratories or other qualified medical staff at the health center. Dr. Walker also claimed that tests ordered by the medical staff were either not performed by Malone, or were not sent to outside laboratories for completion. Other errors were reported to Dr. Walker by nurse practitioners.
 
 
 7
 At some point in late March, 1983, Dr. Walker decided to terminate Malone's employment. Stanislaus terminated her employment effective April 15, 1983.
 
 
 8
 After her dismissal, Malone filed a complaint based on employment discrimination with the Equal Employment Opportunity Commission (EEOC). She received a right-to-sue letter.
 
 
 9
 On November 20, 1984, Malone brought this action against Bakersfield, Stanislaus, and Doctors Betenbaugh and Walker under Title VII and 42 U.S.C. sections 1983 and 1985. Malone prayed for damages and reinstatement. On November 3, 1986, the court granted the State's motion for partial summary judgment and ordered dismissal of the claims against Bakersfield and Stanislaus based on 42 U.S.C. sections 1983 and 1985. The claims against Dr. Betenbaugh were also dismissed. Thus, Dr. Walker became the sole defendant in the section 1983 claim. The sufficiency of the evidence concerning the Title VII claim against all named defendants was decided by the trial judge based on the evidence presented to the jury at the trial in the section 1983 claim.
 
 
 10
 Malone acted as her own attorney at trial. In her case-in-chief, Malone presented evidence that she is a black female; that she is a licensed medical technologist; that she performed capably at Bakersfield; that she scored 100% on her state proficiency test in the first quarter of 1983; and that shortly after her dismissal, Dr. Walker hired Ken Costa, a male with similar qualifications, to replace her. The record does not indicate Costa's race.
 
 
 11
 As evidence that the reasons for her dismissal contained in Dr. Walker's March 29th letter to Dr. Peyton were pretextual, Malone testified that the complaints concerning her job performance were unfounded. For example, although it is true that she had reported a student's pregnancy test was positive when a separate test showed that it was negative, Malone testified that the test she used had limited sensitivity, and that the hormone tested for in pregnancy tests "goes to a peak [in the body] and then it starts climbing down." At the close of Malone's case-in-chief, Dr. Walker moved for a directed verdict. The motion was denied.
 
 
 12
 Dr. Walker testified that Malone had been dismissed for the legitimate business reasons set forth in the March 29, 1983 letter. Dr. Walker did not renew his motion for a directed verdict at the close of all the evidence.
 
 
 13
 The judge instructed the jury that it could award damages based on a finding of retaliatory discharge, disparate treatment, and disparate impact. On February 23, 1990, the jury rendered a general verdict against Dr. Walker in the amount of $300,000.
 
 
 14
 Following the jury's verdict, Dr. Walker moved for a new trial and judgment notwithstanding the verdict. The district court denied the motions on June 21, 1990. Dr. Walker filed a notice of appeal on July 20, 1990, prior to the entry of judgment on the Title VII claim. Malone cross-appealed on August 3, 1990. On February 21, 1991, this court dismissed these appeals. We held that they were prematurely filed because the district judge had not yet entered judgment in the Title VII claim.
 
 
 15
 The district court entered a judgment in favor of Malone on her Title VII claim on August 16, 1991. The district court did not conduct a separate evidentiary hearing, or entertain oral argument on the sufficiency of the evidence to show a violation of Title VII. The court denied Malone's request for reinstatement.
 
 
 16
 On September 13, 1991, the State filed a timely notice of appeal from the final judgment entered on August 16, 1991. Malone filed a timely cross-appeal on September 25, 1991.
 
 II.
 
 17
 Malone argues that the first set of appeals should not have been dismissed because the jury's verdict on the section 1983 claims was the only judgment entered in the case. This argument is without merit. Until the final judgment was entered on all claims, this court lacked jurisdiction. 28 U.S.C. § 1291; see Fed. Land Bank v. L.R. Ranch Co., 926 F.2d 859, 862 (9th Cir.1991) ("[A]s a general rule a district court's decision is appealable under [section 1291] only when the decision ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." (alteration in original) (citations and quotation marks omitted)).
 
 III.
 
 18
 The State argues that the jury's verdict on the section 1983 claim is not supported by substantial evidence. Because the State failed to move for a directed verdict at the close of all the evidence, we are precluded from reviewing the jury verdict for substantial evidence. Herrington v. Sonoma County, 834 F.2d 1488, 1499-1500 (9th Cir.1987), amended on other grounds, 857 F.2d 567 (9th Cir.1988), cert. denied, 489 U.S. 1090 (1989). Where a party fails to move for a directed verdict at the close of the evidence,
 
 
 19
 our inquiry is limited to whether there was any evidence to support the jury's verdict, irrespective of its sufficiency, or whether plain error was committed which, if not noticed, would result in a manifest miscarriage of justice. We review the jury's liability finding to determine whether there is an absolute absence of evidence to support the jury's verdict. To uphold the general verdict, we must find that evidence was presented by [Malone] in support of each ... theory of liability submitted to the jury.
 
 
 20
 Id. (emphasis added) (citations and quotation marks omitted).
 
 
 21
 In this case, Malone presented three theories of liability under section 1983: disparate treatment, retaliatory discharge, and disparate impact.
 
 
 22
 It is not all clear whether Malone's retaliatory discharge and disparate impact claims are cognizable under section 1983. See Learned v. City of Bellevue, 860 F.2d 928, 933 (9th Cir.1988) (dicta) ("Violation of rights created by Title VII cannot form the basis of section 1983 claims."), cert. denied, 489 U.S. 1079 (1989); Yatvin v. Madison Metro. Sch. Dist., 840 F.2d 412, 418-19 (7th Cir.1988) (Fourteenth Amendment will not support a claim for retaliatory discharge brought under section 1983); Foster v. Wyrick, 823 F.2d 218, 220-21 (8th Cir.1987) (Fourteenth Amendment will not support a disparate impact claim brought under section 1983). We need not decide this issue, however, because there is no evidence in the record to support Malone's disparate impact claim. Malone's retaliatory discharge claim cannot support the general verdict because the jury was not instructed on the claim "free from error." Kern v. Levolor Lorentzen, Inc., 899 F.2d 772, 777 (9th Cir.1990).
 
 
 23
 In order for Malone to have prevailed on her disparate impact claim, she first had to identify a "specific employment practice that is challenged." Watson v. Fort Worth Bank and Trust, 487 U.S. 977, 994 (1988). She next had to prove causation by producing "statistical evidence of a kind and degree sufficient to show that the practice in question has caused the exclusion of applicants for jobs or promotions because of their membership in a protected group." Id.; see 42 U.S.C. § 2000e-2(k) (describing plaintiff's burden of proof to show disparate impact).
 
 
 24
 Malone presented evidence that (1) few blacks were employed at Stanislaus, (2) in 1984 Stanislaus hired six blacks, and (3) five of them were fired before the year was out. Malone did not produce any evidence of a specific employment practice that caused a disparate impact or any statistical proof showing disparate impact. Therefore, there is an "absolute absence of evidence" in the record to support a disparate impact theory of liability. Herrington, 834 F.2d at 1500 (citations and quotation marks omitted).
 
 
 25
 The State submitted a retaliatory discharge instruction to the trial judge. Prior to argument, counsel for Dr. Walker inquired whether the court was planning to hold a jury instruction settlement conference. The court stated that "if anybody objects to the instructions, I would expect them to have substitute instructions to submit to the court." Counsel for Dr. Walker told the court that she had no objections to the proposed jury instructions. At the time the court made this inquiry, the court had before it the instructions on retaliatory discharge offered by Dr. Walker's counsel. The court did not indicate to the parties that any of the instructions offered by Dr. Walker would be rejected. The court did not give any instruction on the elements of retaliatory discharge.
 
 
 26
 The record does not reflect the court's reasons for rejecting the State's proposed instruction on the elements of retaliatory discharge. In instructing the jury on damages, however, the court stated: "[i]f you find that the defendant retaliated against the plaintiff for bringing racial discrimination charges or discharged her in retaliation for her complaints of racial discrimination ... you may award reasonable compensation...." With this instruction, the district judge put the question to the jury to decide whether the State discharged Malone in retaliation, but erroneously failed to explain the elements of the cause of action. See Chang v. Johns-Manville Sales Corp. (in re Asbestos Cases ), 847 F.2d 523, 526 (9th Cir.1988) (instructions must make clear "to the jury its responsibilities for finding all the elements of plaintiffs' causes of action"). Thus, under Kern, Malone's retaliatory discharge claim cannot be used to support the general verdict because the jury was not instructed "free from error." 899 F.2d at 777.
 
 
 27
 The record contains some evidence to support Malone's disparate treatment sex discrimination claim. Malone presented evidence that (1) she is a woman, (2) she was qualified for her job and performed it adequately, (3) that she was discharged, and (4) that a man was hired to replace her. She also presented evidence that the legitimate business reasons supplied by Dr. Walker were pretextual.
 
 
 28
 In deciding whether to exercise [discretion to affirm a general verdict where there is insufficient evidence as to some of the theories of liability presented], the reviewing court should determine the potential for confusion of the jury which may have resulted from an erroneous submission of a particular claim or cause of action, whether privileges or defenses of the losing party apply to the count upon which the verdict is being sustained so that they would have been considered by the jury with reference to the count, the strength of the evidence supporting the count being relied on to sustain the verdict, and the extent to which the same disputed issues of fact apply to one or more of the theories in question.
 
 
 29
 Traver v. Meshriy, 627 F.2d 934, 938-39 (9th Cir.1980). The potential for jury confusion in this matter was great because the district court instructed the jury they could award damages to Malone on a retaliatory discharge theory without explaining the elements of that cause of action. In addition, the elements of retaliatory discharge and disparate treatment are different and discrete defenses apply; it is impossible to know which theory of liability or defense the jury accepted or rejected in reaching its general verdict. Moreover, the record contains no direct evidence of discrimination. The indirect evidence of discrimination is limited to the fact that Malone is a black woman and was discharged, as well as her testimony that the reasons asserted to justify her discharge were insufficient. Finally, the disputed issue of fact in Malone's retaliatory discharge claim is whether she was fired in retaliation for filing an employment discrimination complaint; the disputed issue of fact in her disparate treatment claim is whether she was discharged because of race or sex.
 
 
 30
 Because the potential for confusion of the jury was substantial due to the erroneous submission of the retaliatory discharge claim to the jury without any admonition regarding the elements of this theory of liability, we decline to exercise our discretion to uphold the judgment based on the jury's general verdict.
 
 IV.
 
 31
 Although Malone's Title VII claim was decided by the trial court, it did not consider additional proof nor did it entertain argument on the sufficiency of the evidence to support the Title VII claims. The court also failed to make findings of fact and conclusions of law as required by Rule 52(a) of the Federal Rules of Civil Procedure. Thus, a remand is compelled. Norris v. City and County of San Francisco, 900 F.2d 1326, 1329 (9th Cir.1990). Furthermore, a remand is also required because the court appears to have erroneously concluded that an award of damages for backpay precluded the additional remedy of reinstatement.
 
 
 32
 It appears from its memorandum of decision that the court considered itself bound by the jury's implied findings of fact and credibility. See Miller v. Fairchild Industries, Inc., 885 F.2d 498, 507 (9th Cir.1989) ("[W]here an employee brings an equitable discrimination claim (e.g., Title VII) and a legal discrimination claim (e.g., § 1981) against an employer based on the same facts, the Seventh Amendment requires the trial judge to follow the jury's implicit or explicit factual determinations in deciding the legal claim."), cert. denied, 494 U.S. 1056 (1990). Since the judgment awarding damages in the section 1983 claim must be reversed because of the failure to instruct on the elements of retaliatory discharge, we also reverse the judgment on the Title VII claim and remand for a new trial.
 
 
 33
 Each party to bear its own costs.
 
 
 34
 REVERSED and REMANDED.
 
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argumwent. Fed.R.App.P. 34(a); 9th Cir.R. 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3